O

# United States District Court
# Central District of California

| | |
|---|---|
| JESUS JAIME GONZALEZ TERRAZAS et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEL RECORDS INC. et al., <br><br> Defendants. | Case № 2:17-cv-02152-ODW (KSx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS [105]** |

## I.   INTRODUCTION

Plaintiffs Jesus Jaime Gonzalez Terrazas ("Gonzalez") and Cesar Ivan Sanchez Luna ("Sanchez") bring this action against Defendants Del Records, Inc. ("Del Records"), Del Records Entertainment, Inc. ("Del Entertainment"), and Angel Del Villar. (First Am. Compl. ("FAC"), ECF No. 99.) Defendants answered and asserted eight counterclaims against Plaintiffs. (Answer & Countercl. ("Countercl.")[1], ECF No. 103.) Plaintiffs now move to dismiss Defendants' first, second, third, fourth, fifth, and eighth counterclaims. (Mot. Dismiss ("Mot."), ECF No. 105.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.[2]

---

[1] "Countercl." refers to Defendants' counterclaims, which begin on page fifty-four of the document.

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[3]

In 2012, Felipe de Jesus Hernandez Rojas ("Hernandez") hired Gonzalez to manage the musical group, "Ariel Camacho y Los Plebes del Rancho" (the "Band"). (Countercl. ¶¶ 20–21.)  The Band consists of Jose Ariel Camacho Barraza ("Camacho"), Sanchez, and Omar Samuel Burgos Gerardo ("Burgos"). (*Id.* ¶ 21.)

### A. Hernandez Agreement and 2014 Del-JG Music Agreements

On April 19, 2013, the Band members signed an exclusive contract with Hernandez. (*Id.*)  Pursuant to this agreement, Hernandez owned all rights relating to the Band and the exclusive right to manage, promote, hire, and tour the Band. (*Id.*)

In 2014, Del Records and Del Entertainment (collectively, "Del") worked with Gonzalez to prepare an Exclusive Recording Agreement and a Personal Management Agreement with the Band. (*Id.* ¶¶ 22–23.)  To prepare the agreements, Del sent several drafts to be reviewed by Gonzales, Hernandez, and Hernandez's attorneys. (*Id.* ¶ 23.)  Under Gonzalez's instruction, Del prepared the agreements to be signed by Hernandez because Hernandez had "the power of attorney" over the Band and Gonzalez cannot sign because he "was just an employee of Hernandez." (*Id.*)

On March 24, 2014, JG Music, a moniker used by Gonzales, for and on behalf of the Band, entered into an Exclusive Recording Agreement with Del Records and a Personal Management Agreement with Del Entertainment (collectively, "2014 Del-JG Music Agreements"). (*Id.* ¶¶ 22–23 & n.3.)  Carlos Pinedo signed the agreements on behalf of Hernandez and JG Music. (*Id.* ¶ 23.)  Pursuant to these agreements, JG Music delivered the Band's sound recordings to Del Records. (*Id.*)

### B. Death of Hernandez and Camacho, and the New Band

On February 25, 2015, Camacho died from injuries sustained in a car accident. (*Id.* ¶ 27.)  Thereafter, on April 17, 2015, Hernandez passed away. (*Id.* ¶ 29.)

---

[3] All factual references derive from Defendants' counterclaim, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

Following Camacho's death, Angel Del Villar, Del's founder, came up with the concept of continuing the Band in honor of Camacho with the new name, "Los Plebes del Rancho de Ariel Camacho" (the "New Band"). (*Id.* ¶ 30.) The New Band would retain the original Band members and add Jose Manuel Lopez Castro ("Castro") as the new lead singer. (*Id.* ¶¶ 30–32.) Del then sent Gonzalez to meet with and sign Castro in Mexico. (*Id.* ¶ 32.) On May 8, 2015, Gonzalez signed Castro to Del ("2015 Del-Castro Agreement"). (*Id.*) Del began arranging for the New Band to record a new record and to begin a tour. (*Id.* ¶ 34.)

### C. Gonzalez's Control of the New Band and Fraudulent Documents

Around February 2016, Gonzalez initiated "a scheme to take control of" the New Band. (*Id.* ¶ 36.) Gonzalez caused the New Band to refuse to perform concerts and events that Del scheduled to promote the new album. (*Id.* ¶ 38.) In March 2016, in response to Gonzalez's actions, Del sent letters to JG Music and Castro notifying them of their "breaching behavior." (*Id.* ¶ 40.)

As part of this "scheme," Gonzalez created eight backdated agreements relating to Camacho and the New Band and caused the New Band members to execute the backdated agreements. (*Id.* ¶¶ 46, 50.) The backdated agreements, reflecting dates in 2012, 2013, and 2015, made it appear that Camacho, Sanchez, and Castro signed Exclusive Recording Agreements with Gonzalez prior to signing with Del. (*Id.* ¶¶ 48, 50, 53, 59.) Gonzalez's purported agreement with Camacho gave Gonzalez exclusive rights to record and distribute Camacho's songs, to control Camacho's stage name, and to own and control all copyrights created under the agreement. (*Id.* ¶ 54.) Gonzalez's purported agreement with Castro reflects a 2013 date—before Camacho's death and the formation of the New Band—and is notarized by Gonzalez's notary, whom he met in 2016. (*Id.* ¶¶ 60, 62.)

Around October 2016, Gonzalez fabricated a formal written notice backdated to February 2, 2016, which notified Del that Gonzalez, as Manager of JG Music, wished to terminate JG Music's prior agreements with Del. (*Id.* ¶ 51.) Gonzalez allegedly

created this letter to show that any agreements with Del were terminated prior to Del's March 2016 breach letters. (*Id.* ¶ 52.)

### D. "Los Plebes del Rancho de Ariel Camacho" Trademark

Since February 2015, Del has continued to use the mark "Los Plebes del Rancho de Ariel Camacho" (the "Mark"). (*Id.* ¶ 64.) Del's use of the Mark includes arranging several concerts with fliers bearing the Mark between September 2015 and February 2016 and releasing an album bearing the Mark on February 26, 2016. (*Id.* ¶¶ 67–68.) On March 31, 2016, Del applied to register the Mark with the U.S. Patent and Trademark Office ("USPTO"). (*Id.* ¶ 70.)

Four months later, on July 11, 2016, Gonzalez, Sanchez, and Castro filed a separate application to register the Mark with USPTO. (*Id.* ¶ 71.) This application included a specimen of the Mark that bore Del Entertainment's logo. (*Id.* ¶¶ 72–73.) On August 18, 2017, Gonzalez, Sanchez, and Castro opposed Del's registration application on the grounds that they were the rightful owners of the Mark and Del submitted a fraudulent application to the USPTO. (*Id.* ¶ 74.) Because Del was unaware of the opposition, the USPTO subsequently entered default judgment against Del and granted Gonzalez, Sanchez, and Castro registration of the Mark. (*Id.* ¶¶ 75–76.)

### E. This Action

On March 19, 2017, Gonzalez, Sanchez, and Castro initiated this action against Defendants and asserted nineteen claims which include, among others, claims for trademark and copyright infringement and fraud. (Compl., ECF No. 1.) Thereafter, on January 4, 2019, the Court granted the parties' stipulation to dismiss with prejudice Castro's claims against Defendants. (Order Dismiss, ECF No. 39.) On June 20, 2024, Gonzalez and Sanchez filed the First Amended Complaint. (FAC).

On July 5, 2024, Defendants filed their answer and asserted eight counterclaims against Gonzalez and Sanchez for: (1) cancellation of trademark registration for fraud in procurement; (2) declaration of priority of trademark; (3) intentional interference with contract; (4) inducing breach of contract; (5) interference with prospective

business relations; (6) violation of California Penal Code section 496; (7) unfair competition in violation of California law; and (8) fraudulent inducement. (Countercl. ¶¶ 82–159.)

Gonzalez and Sanchez now move to dismiss Defendants' first, second, third, fourth, fifth, and eighth counterclaims for failure to join a party and failure to state a claim under Federal Rule of Civil Procedure ("Rule" or "Rules") 12(b)(7) and 12(b)(6). (Mot. 1–2.) The Motion is fully briefed. (Opp'n, ECF No. 106; Reply, ECF No. 107.)

### III.   LEGAL STANDARD

**A.   Rule 12(b)(7)**

A party may seek dismissal of a complaint for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 requires joinder of a person whose absence would preclude complete relief among existing parties. Fed. R. Civ. P. 19(a)(1)(A). Alternatively, joinder is required of any person who claims an interest in the action and is so situated that disposing of the action in the person's absence may (1) "impair or impede the person's ability to protect the interest," or (2) "leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). "Th[e] standard is met when failure to join will lead to separate and redundant actions." *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011–12 (N.D. Cal. 2000). It is *not* met when "defendants are only tangentially related to the cause of action or would not prevent complete relief." *Id.* at 1012. "Complete relief is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Nash-Perry v. JTH Tax, Inc.*, No. 2:19-cv-05843-GW (FFMx), 2019 WL 5902103, at *3 (C.D. Cal. Nov. 8, 2019) (quoting *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013)).

**B.   Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678 (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**C.    Rule 9(b)**

When a plaintiff's claims are fraud-based, the heightened pleading requirements of Rule 9(b) apply. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150

(S.D. Cal. 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [and] must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (emphasis omitted).

## IV. DISCUSSION

Plaintiffs' Motion is premised on three grounds. First, Plaintiffs move to dismiss Defendants' first and second counterclaims—cancellation of trademark and priority of trademark—under Rule 12(b)(7) for failure to join Castro, who is a co-owner of the Mark. (Mot. 1.) Second, Plaintiffs move to dismiss Defendants' first and eighth counterclaims—cancellation of trademark and fraudulent inducement—under Rule 12(b)(6) for failure to satisfy Rule 9's heightened pleading requirements. (*Id.* at 2.) Third, Plaintiffs move to dismiss Defendants' third, fourth, and fifth counterclaims—intentional interference with contract, inducing breach of contract, and interfering with prospective business relations—under Rule 12(b)(6) for failure to state a claim as a matter of law. (*Id.*) The Court addresses each argument in turn.

### A.  Joinder (First and Second Counterclaims)

In their first counterclaim, Defendants seek to cancel Gonzalez, Sanchez, and Castro's registration of the Mark under 15 U.S.C. §§ 1119 and 1064(3). (Countercl. ¶¶ 100–01.) In their second counterclaim, Defendants ask the Court to declare that Del has priority use of the Mark under 28 U.S.C. § 2201(a). (*Id.* ¶ 107.) Plaintiffs move to dismiss both counterclaims for failure to join Castro, a co-owner of the Mark. (Mot. 4.) As the parties do not dispute that joinder of Castro is feasible, (*id.* at 6; *see generally* Opp'n), the Court analyzes whether Castro is a necessary party.

Rule 19(a)(1)(A) provides that a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties." Alternatively, Rule 19(a)(1)(B) requires joinder of a party who "claims an interest relating to the subject of the action" if that person's absence may "impair or impede[] the person's ability to protect the interest" or "leave an existing party subject to substantial risk of

incurring double, multiple, or inconsistent obligations because of the interest." If a non-party satisfies either rule, then "the non-party is necessary." *Yellowstone County v. Pease*, 96 F.3d 1169, 1172 (9th Cir. 1996).

"When a trademark registration is cancelled, its owner is no longer entitled to the rights that flow from federal registration, including the presumption that the mark is valid." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d. 1085, 1097 (9th Cir. 2013.) Likewise, priority of use is the "standard test of ownership" in trademark law. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 2011)). Prior use of the registered mark can rebut the presumption of ownership arising from registration of the mark. *See Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

When a cause of action seeks to cancel or invalidate the trademark rights of its owner(s), many district courts—including those in this district—have found the trademark owner or co-owners necessary under Rule 19. *See, e.g.*, *GayDays, Inc. v. Master Ent., Inc.*, No. 2:07-cv-06179-ABC (JWJx), 2008 WL 11336945, at *4 (C.D. Cal. Mar. 6, 2008) (finding co-owner of trademark was a necessary party in a trademark infringement action); *Ferrer v. Hollywood for Children, Inc.*, No. 2:17-cv-7318-CBM (FFMx), 2018 WL 5267084, at *2 (C.D. Cal. Mar. 14, 2018) (same); *Golden Temple of Or., LLC v. Wai Lana Prods., LLC*, No. 03:09-CV-902-HZ, 2011 WL 6070385, at *2 (D. Or. Dec. 5, 2011) ("When ownership of a trademark is the central issue in a case, the trademark owner is a necessary party."). This result is grounded in the reasoning that, in trademark infringement claims, the "ruling would apply equally to [each co-owner's] ownership of the mark and [each co-owner] potentially would be bound by that ruling." *GayDays*, 2008 WL 11336945, at *4. Thus, joinder is necessary "in order that the alleged infringer might have tried in one action, as to all parties, . . . the alleged improper recordation of the trade mark." *Massa v. Jiffy Prods. Co.*, 240 F.2d 702, 705 (9th Cir. 1957).

1    Defendants argue that Castro is not a necessary party because he "no longer
2 claims an interest to the trademark." (Opp'n 8.)  In support, Defendants submit a
3 declaration from Castro, in which Castro states he has "no interest in what happens
4 with" the Mark.  (Decl. Allen Secretov ISO Opp'n Ex. B ("Castro Decl.") ¶ 8, ECF
5 No. 106-1.)  However, Defendants do not offer any authority to support the proposition
6 that a trademark co-owner, who dismissed his own claims in the underlying complaint,
7 is not a necessary party under Rule 19 in a counterclaim to invalidate or cancel the
8 trademark.  (*See generally* Opp'n 2–9.)  Notwithstanding Castro's declaration—which,
9 at best, shows he fails to "claim an interest" under Rule 19(a)(1)(B)—Defendants fail
10 to show how the Court can "accord complete relief among the existing parties" without
11 Castro.  *See* Rule 19(a)(1)(A).

12    Defendants cite to this Court's decision in *Armes v. Post*, No. 2:20-cv-03212-
13 ODW (PJWx), 2020 WL 6135068, at *4 (C.D. Cal. Oct. 19, 2020), to assert that there
14 is no prejudice to Plaintiffs by failing to join Castro.  (Opp'n 8.)  But *Armes* involved a
15 dispute over copyright, not trademark.  Furthermore, the plaintiff in *Armes* did not seek
16 to invalidate the existing copyrights; rather, he sought credit as a co-writer and
17 co-producer for the copyrights.  *Armes,* 2020 WL 6135068, at *2.  For this reason, this
18 Court held in *Armes* that the absent co-owners of the copyright are not necessary
19 because their interests can be protected by shaping relief to deny the plaintiff claims to
20 the absent co-owner's share of the profits.  *Id.* at *4.  The same type of relief cannot be
21 shaped here.  Section 1119 requires the Court to cancel the registration "in whole or in
22 part . . . and otherwise rectify the register with respect to the registrations of *any party*
23 *to the action*." 15 U.S.C. § 1119 (emphasis added).  Should Defendants prevail on these
24 counterclaims, the Court cannot cancel Castro's registration—he is still a co-owner of
25 the Mark but is not a party to the action.  This would prevent complete relief among the
26 parties.  *See* Rule 19(a)(1)(A).  Thus, Castro is a necessary party.

Because Castro is a necessary party, the Court **GRANTS** Plaintiffs' Motion and dismisses without prejudice Defendants' first and second counterclaims with leave to amend so that Defendants can join Castro.

**B.   Pleading with Particularity (First and Eighth Counterclaims)**

Plaintiffs next move to dismiss Defendants' first and eighth counterclaims for failure to plead them with particularity required by Rule 9(b).  (Mot. 2)

*1.   Fraud in Procurement*

In their first counterclaim, Defendants allege Plaintiffs falsely represented to the USPTO that they were the owner of the Mark and that they first used the Mark "at least as early as" October 3, 2014.  (Countercl. ¶¶ 85, 87.)

"Fraud in procurement of a trademark registration may be raised as a ground for cancellation in civil litigation, in which case it may function as a 'defense' to a claim of trademark infringement."  *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1079 (C.D. Cal. 2000).  Such fraud "occurs when an applicant knowingly makes false, material representations of fact in connection with an application."  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).  To satisfy Rule 9(b), the fraud claim "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.

Here, Defendants adequately plead fraudulent procurement with particularity. Defendants allege that on July 11, 2016 (the "when"), Plaintiffs (the "who") falsely represented in their registration application for the Mark (the "where") that they owned the Mark and first used the Mark as early as October 3, 2014 (the "what").  (Countercl. ¶¶ 84–87.)  Defendants point to several facts to show "how" this conduct is fraudulent. First, Defendants assert that Plaintiffs did not have a valid agreement to form the New Band when they filed the registration application on July 11, 2016.  (*Id.* ¶¶ 89–90.)  Any contract between Gonzalez and the New Band was allegedly created in October 2016 and "doctored to falsify their effective dates as being in 2015."  (*Id.* ¶ 90.)  Based on these allegations, Defendants assert that Plaintiffs could not have owned the Mark when

they filed the registration application in July 2016. (*Id.*) Second, Defendants allege that Plaintiffs misrepresented their statement of use because the Mark—which is the name of the New Band formed in honor of Camacho *after* his death—could not have been used in 2014 when Camacho was still alive. (*Id.* ¶ 90 (noting Camacho died in February 2015).)

Accordingly, Defendants sufficiently plead their trademark cancellation counterclaim, and the Court **DENIES** Plaintiffs' Motion on this basis.

2. *Fraud in the Inducement*

In their eighth counterclaim, Defendants assert that Gonzalez fraudulently induced Defendants to enter into the 2014 Del-JG Music Agreements and the 2015 Del-Castro Agreement by concealing his preexisting agreements. (Countercl. ¶¶ 147–48, 152–53.)

Fraud in the inducement of a contract is generally an affirmative defense and requires that "the promisor knows what he is signing but his consent is *induced* by fraud." *Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986) (emphasis in original). Under California law, the elements of fraud are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007); *see also Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 827 (N.D. Cal. 2021) (noting that fraud in inducement of a contract and actual fraud share the same elements).

When, as here, the fraud is by concealment, the plaintiff must also allege that "the defendant had a duty to disclose what was concealed." *Baggett*, 582 F. Supp. 2d at 1267. This duty arises in four circumstances, when the defendant: (1) "is in a fiduciary relationship with the plaintiff"; (2) "ha[s] exclusive knowledge of material facts not known to the plaintiff"; (3) "actively conceals a material fact from the plaintiff"; and (4) "makes partial representations but also suppresses some material

fact." *Id.* at 1267–68. A plaintiff must plead "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)); *see also Vess*, 317 F.3d at 1106.

Plaintiffs argue Defendants fail to plead with particularity because the fraudulent inducement allegations are based on "information and belief" about how Gonzalez fraudulently backdated eight agreements. (Mot. 8.) The Court need not reach this argument because Plaintiffs misconstrue the counterclaim. (*See id.* at 8–9.) Defendants' eighth counterclaim does not concern the allegedly backdated agreements. Instead, Defendants assert, in the event the backdated agreements are valid, that Gonzalez fraudulently induced Defendants to enter into the 2014 Del-JG Music Agreements and 2015 Del-Castro Agreement. (*See* Countercl. ¶¶ 147–48.) This counterclaim thus centers around Gonzalez's actions during the signing of the 2014 Del-JG Music Agreements and 2015 Del-Castro Agreement, not the backdated agreements.

First, Defendants adequately allege the who, when, where, and what involved in the alleged inducement by concealment. Defendants allege that on March 24, 2014, prior to the execution of the 2014 Del-JG Music Agreements, Gonzalez fraudulently concealed the existence of prior conflicting agreements when he participated in the negotiation and signing of the 2014 Del-JG Music Agreements with Defendants through telephone and in-person meetings at Del's offices. (Countercl. ¶¶ 23, 152–53.) Likewise, Defendants claim that on May 7, 2015, Gonzalez concealed the fact that he had prior conflicting agreements with Castro when he was sent by Defendants to meet with Castro in Mexico to procure the 2015 Del-Castro Agreement. (*Id.* ¶ 32.)

Next, Defendants adequately establish Gonzalez's duty to disclose. Gonzalez's preexisting agreements are material because they conflicted with the terms of the 2014 Del-JG Music Agreements and 2015 Del-Castro Agreement. (*Id.* ¶¶ 150–52.)

Defendants did not know of the preexisting agreements. (*Id.* ¶ 155.) Therefore, Gonzalez, who had exclusive knowledge of the agreements, had a duty to disclose them.

Finally, Defendants adequately plead "how" Gonzalez knew but concealed the material information to induce Defendants' reliance. Defendants allege that Gonzalez was "heavily involved" in the negotiations of the 2014 Del-JG Music Agreements and the 2015 Del-Castro Agreement. (*Id.* ¶¶ 24, 151.) Yet, "[a]t no point during the course of the relationship from 2014 to early 2016 did Gonzalez assert to Del that he had any type of recording agreement or management agreement with [the Band and New Band members] that would prevent any of them from signing or performing under" their agreements with Del. (*Id.* ¶¶ 35; *see id.* ¶¶ 152–54.) Defendants "would have reasonably behaved differently" had they known about the preexisting agreements. (*Id.* ¶ 156.) As a result of Gonzalez's concealment and omissions, "Del has suffered and will continue to suffer monetary damages." (*Id.* ¶ 158.)

Based on the above, the Court finds Defendants adequately pleaded with particularity fraud in inducement and **DENIES** Plaintiffs' Motion on these grounds.

**C.    Tortious Liability (Third, Fourth, and Fifth Counterclaims)**

Defendants assert their third, fourth, and fifth counterclaims against Gonzalez for (1) tortious interference with contract, (2) inducing breach of contract, and (3) tortious interference of prospective business relations. (Countercl. ¶¶ 133.) Plaintiffs seek dismissal of these counterclaims as a matter of law under Rule 12(b)(6) on the grounds that Gonzalez is not a "stranger" to the agreements and cannot be liable. (Mot. 10–12.) This argument is premised on Defendants' allegations that Gonzalez is an "employee" of Hernandez and a manager of the Band.[4] (*Id.* at 10; *see also* Countercl. ¶ 20.)

---

[4] Plaintiffs claim Gonzalez is not a "stranger" to JG Music, Hernandez, and the Band because Defendants allege that Gonzalez is an employee of Hernandez and a manager of the Band. (Mot. 10.) Plaintiffs do not claim to be a manager or agent of Castro. (*See generally id.*) Accordingly, the Court's analysis is limited to these counterclaims concerning only the 2014 Del-JG Music Agreements, not the 2015 Del-Castro Agreement.

### 1. Stranger

California recognizes "that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001); *see also Flour Corp. v. Resolute Mgmt., Inc.*, No. 8:21-cv-01907-JLS (KESx), 2022 WL 19237954, at *3 (C.D. Cal. 2022) ("[O]nly contracting parties and agents of contracting parties are barred from being subjected to tortious interference claims"). In the same vein, "corporate agents and employees acting for or on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract, unless the corporate agent was acting for his own benefit, rather than the corporation's benefit." *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 610 (N.D. Cal. 2022) (cleaned up).

As Defendants note, they are "not alleging that Gonzalez acted on behalf of Hernandez or JG Music when he instituted his scheme to usurp control of the band." (Opp'n 20.) Nor do Defendants allege that Gonzalez is a party to the 2014 Del-JG Music Agreements. (*See generally* Countercl.) Rather, Defendants allege that Gonzalez created other agreements exclusively between himself individually and the Band members and Castro. (*See id.* ¶ 50.) That Gonzalez may be an employee of JG Music "does not immunize [him] from personal liability for [his] tortious conduct" and does not "insulate [him] from liability for [his] own tortious conduct." *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 966 (2013) (cleaned up). Furthermore, it is Plaintiffs', not Defendants', burden to prove agency and the scope of that agency. *See Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners II*, 870 F. Supp. 2d 881, 916 (C.D. Cal. 2012) ("The burden of proof lies with the party asserting each claim, counterclaim, or defense, except for the burden of proving agency and the scope of the agent's authority, which rests upon the party asserting the existence thereof.").

1. Defendants adequately allege that Gonzalez can be liable for tortious interference and inducing breach of contract while acting for his own benefit. Accordingly, the Court **DENIES** the Motion on this basis.

*2.    Manager of the Artists*

Plaintiffs next rely on *PM Group, Inc. v. Stewart*, 154 Cal. App. 4th 55 (2007), for the assertion that, in the entertainment context, Gonzalez cannot be liable as a manager of Camacho and the Band. (Mot. 12).

In *Stewart*, a concert promoter sued a singer, Rod Stewart, for tortious interference after Stewart cancelled a tour and caused the concert promoter to lose subcontracts for opportunities to promote other entertainers. *Stewart*, 154 Cal. App. 4th at 56. The court there held that Stewart's agent and manager could not be liable for tortious interference as a matter of law because they were a party to the subcontracts at issue. *Id.* at 65.

The facts in *Stewart* are inapposite because the parties there did not question whether the agent's and manager's conduct benefited Stewart. That is not so here. When "it is at least reasonably possible that the manager acted out of self-interest rather than in the interest of the principal," the manager can only enjoy the protection of the manager's privilege if "the trier of fact concludes that the manager's *predominant* motive was to the benefit of the principal." *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1198 (2003). Here, Defendants do not allege, nor do Plaintiffs assert, that Gonzalez's involvement in the New Band's breaching behavior benefited the New Band. (*See generally* FAC; Countercl.) Rather, Defendants allege that Gonzalez acted for his own benefit to profit from the rights to the New Band. (Countercl. ¶¶ 113, 120, 131.) Given Defendants' allegations and the necessary fact-intensive analysis, the Court cannot make such determination on a motion to dismiss. *See Centerline Hous. P'ship I, L.P.- Series 2 v. Palm Cmtys*., No. 8:21-cv-00107-JVS (JDEx), 2021 WL 2493255, at *4–5 (C.D. Cal. Apr. 26, 2021) (applying *Huynh* and finding the question of the manager's privilege to be "thoroughly fact intensive" and not appropriate for determination at the

motion to dismiss stage); *see also Keenan v. Cox Commc'n Cal., LLC*, 835 Fed. App'x 193, 196 (9th Cir. 2020) (finding the district court erred in dismissing a claim as a matter of law when there is a triable issue of fact to be determined by a jury).

Accordingly, Plaintiffs fail to show that the third, fourth, and fifth counterclaims fail as a matter of law. The Court thus **DENIES** Plaintiffs' Motion on these grounds.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Dismiss. (ECF No. 105.) The Court **DISMISSES WITH LEAVE TO AMEND** Defendants' first and second counterclaims. Defendants must file their amended first and second counterclaims to join Castro as a necessary party by no later than **thirty (30) days** from the date of this Order. Failure to join Castro pursuant to this Order will result in dismissal of Defendants' first and second counterclaims without prejudice.

**IT IS SO ORDERED.**

February 3, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**